62 N.J. Super. 407 (1960)
163 A.2d 232
IN THE MATTER OF THE ESTATE OF MIRON MARKEWITSH, DECEASED.
Superior Court of New Jersey, Passaic County Court, Probate Division.
Decided June 30, 1960.
*408 Mr. William F. Hinchliffe, attorney for Chester Stanowski, administrator of the estate of Miron Markewitsh.
Mr. Morton Stavis, of Gross & Stavis, attorneys for Makareva Taisa Mironova and Dekon Anastasia Semenova, legatees residing in the Soviet Union.
NADELL, J.C.C.
The decedent, Miron Markewitsh, a resident of Paterson, died intestate on March 24, 1957, leaving as his next of kin his wife and daughter, both of whom reside in the Soviet Union. The value of the estate is approximately $9,000. The final account of Chester Stanowski, administrator of this estate, was approved on May 19, 1960. This is an application for an order of distribution.
The question in this case is whether the money involved in this estate should be sent to the next of kin in the Soviet Union, or should be deposited with the Passaic County Court for the benefit of said next of kin.
Under N.J.S. 3A:25-10,
"Where it shall appear that a legatee, next of kin or beneficiary of a trust would not have the benefit or use or control of the money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld, the court to which the fiduciary is accountable, or, in the case of a trust where the trustee was appointed other than by a court, the superior court, on motion of any person in interest, or, failing such, on motion of the attorney general, or on the court's own motion, may direct that such money or other property be paid into such court for the benefit of such legatee, next of kin, beneficiary *409 of a trust, or such person or persons who may thereafter appear to be entitled thereto. Such money or other property so paid into court shall be paid out only by order of the court. * * *"
Under this statute (L. 1940, c. 148, p. 315, § 1), where it shall appear that the next of kin would not have the benefit or use or control of the money due him, or where such special circumstances make it appear desirable that such payment should be withheld, the court to which the fiduciary is accountable, on the court's own motion, may direct that such money be paid into the court for the benefit of such next of kin.
This statute was applied in In re Volencki's Estate, 35 N.J. Super. 351 (Cty. Ct. 1955), where Judge Bennett ordered that money due beneficiaries, residing in the People's Republic of Hungary, should be deposited into court in New Jersey for the benefit of said beneficiaries. Judge Bennett, at page 352, mentioned that this statute was enacted by the New Jersey Legislature in 1940 and was patterned after an earlier New York statute, and that the statute, together with the statutory history in New York, was discussed in the case of In re Url's Estate, 7 N.J. Super. 455 (Cty. Ct. 1950), appeal dismissed 5 N.J. 507 (1950). The administrator, asking for an order of distribution in the Volencki case, requested the court to utilize N.J.S. 3A:25-10 and referred to the decision of the New York court in Matter of Siegler's Will, 284 App. Div. 436, 132 N.Y.S.2d 392 (App. Div. 1954).
The Url case and the Volencki case were cited by our Supreme Court in Martin v. Haycock, 22 N.J. 1, at p. 9 (1956).
In the present case, it appears by a letter from the United States Department of State, dated May 27, 1960, that, although the Federal Government places no restriction upon the transfer of private funds to individuals residing in the Union of Soviet Socialist Republics, nevertheless, attention is called to the federal regulation concerning payment by our Federal Government of annuities or similar *410 benefits under federal legislation to persons residing in the Union of Soviet Socialist Republics:
"* * * The Secretary of the Treasury is authorized by law (31 U.S.C. 123) to determine the countries to which United States Treasury checks may not be sent because local conditions preclude assurance that the payee will receive the check and if he receives it will be able to negotiate it for its full value. The list of countries to which checks are not sent (31 C.F.R. 211.3) includes the Union of Soviet Socialist Republics. * * *"
In this connection the decision of the New York Court of Appeals in In re Braier's Estate, 305 N.Y. 148, 111 N.E.2d 424 (1953), is pertinent.
In this case the Surrogate's Court of New York ordered money due to Hungarian nationals to be deposited with the New York City Treasurer for their benefit. The surrogate's order was based upon § 269 of the Surrogate's Act, which is practically identical with the New Jersey statute. It reads as follows:
"Where it shall appear that a legatee * * * would not have the benefit or use * * * of the money * * * due him, or where other special circumstances make it appear desirable that such payment should be withheld, the decree may direct that such money * * * be paid into the surrogate's court for the benefit of such legatee."
On appeal, the order of the Surrogate's Court was affirmed by the Court of Appeals. The court pointed out that the Federal Government was in a better position than the State of New York to determine whether or not a beneficiary under a New York estate residing in Hungary would be likely to have the benefit or use of the money if it were sent to him in Hungary. The Court of Appeals followed the United States Treasury Regulation of 1951 with respect to checks drawn against funds of the United States in favor of Hungarian nationals and concluded that local conditions in Hungary are such that there is not a reasonable *411 assurance that a payee in those areas will actually receive payment. 16 Fed. Reg. 1818.
The decision of the Court of Appeals cited Matter of Getream's Estate, 200 Misc. 543, 107 N.Y.S.2d 225 (Surr. Ct. 1951), as to sending money to residents of Hungary, and Matter of Best's Estate, 200 Misc. 332, 107 N.Y.S.2d 224, as to sending moneys to residents of Russia, and Matter of Yee Yoke Ban's Estate, 200 Misc. 499, 107 N.Y.S.2d 221, 222 (Surr. Ct. 1951), as to sending money to residents of China. In all of these cases the sending of money to nationals of those countries was refused by the court and the money deposited into court in New York on the ground that the Federal Government had determined that there was not a reasonable assurance that a payee in those areas would actually receive payment.
Similarly in the case at bar, the advice from the United States Department of State, dated May 27, 1960, is to the effect that the Secretary of the Treasury has determined, pursuant to statutory authorization, that United States Treasury checks may not be sent to residents of various countries, including residents of the Union of Soviet Socialist Republics, for the reason that local conditions preclude assurance that the payee will receive the check and if he receives it will be able to negotiate it for the full value.
Under all the circumstances of this case, therefore, the money due the next of kin should be deposited with the County Court of Passaic County for the benefit of said next of kin. The payment into court is interlocutory, and application for distribution to the beneficiaries may be renewed when it appears probable that local conditions in the Union of Soviet Socialist Republics indicate that there is a reasonable assurance that the beneficiaries will have the benefit or control of the money due.
An order may be presented in accordance with this opinion.