92 N.J. Super. 498 (1966)
224 A.2d 132
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM STEELE AND WILLIAM STOKES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1966.
Decided November 10, 1966.
*500 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Fred J. Kalisky, assigned counsel, argued the cause for appellant William Stokes.
Mr. Joel L. Pitman, argued the cause for appellant William Steele (Mr. Robert Diamond, assigned counsel, attorney).
Mr. Martin G. Holleran, Assistant County Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendants were convicted after a trial by jury upon joint indictments charging them with the rape of Miss L and the robbery of Alfred E. Blyskal.
Of the several grounds which they raise on appeal we find only one of determinative merit, viz., that the court erred in limiting cross-examination of the complaining witnesses, which was designed to affect their credibility.
The proofs offered by the State ran thus: On March 7, 1964 Blyskal and Miss L, by prior arrangement, had a social engagement. At about 10:30 of that evening Blyskal, operating *501 a 1955 Cadillac, called for Miss L at her address in Irvington. They drove about for a while and then went to the Joli Lounge, a tavern in Newark, where they had "about 3 or 4 drinks" and "listened to the music." At about 2 A.M. they left the tavern and went to Blyskal's car, which was parked about 75 feet away. According to Miss L, Blyskal said he felt a little tired and "he wanted to doze off for a half hour." While they were seated in the car, he in the driver's seat and she beside him, the car door on Blyskal's side was opened by one of two men. One man "had a pipe or some type of a bat or something" and struck Blyskal in the face with it. Mention was made by the men of getting Blyskal's wallet. Before he had an opportunity to give them the wallet, the man who struck him said, "jump in the car and let's get out of here." From the stand Blyskal identified defendant Steele as that person, and defendant Stokes as his companion. Blyskal was pulled from the car and thrown to the ground. The two men then jumped into the Cadillac and, with Miss L sitting in the middle of the front seat, drove off. Blyskal, despite some difficulty in locating a telephone, managed to reach the police and inform them of the robbery.
The testimony relevant to the alleged rape came entirely from Miss L. She testified that the men drove her to a desolate spot in Weequahic Park where, after the car was parked, she was "taken in the back of the car." She did not remember who "took" her there. Her clothing was removed "from the waist down." She did not remember who took her clothing off, or whether she herself removed it. She then said that her abductors, whom she identified as the two defendants, successively had sexual intercourse with her, in all four times, in the course of which they kissed her mouth and fondled her breasts. The entire affair lasted 20 minutes. She had a clear and detailed recollection of what happened, admitted that she had not been threatened either en route to the park or at the time of the "attack," or that acts of violence (other than the intercourse itself) had been practiced upon her. In fact, in her direct examination she gave no testimony whatever that *502 she submitted to the men through fear of violence. It was only after the direct examination was concluded that the court through a series of leading questions, which in form would have been objectionable had they been propounded by the prosecutor, asked:
"Q. Miss L., before the cross-examination starts, they forced you into the back of the car?
A. Yes.
Q. Were you in fear when you went into the back of the car?
A. Of course.
Q. They didn't ask you to have relations, did they?
A. No, I didn't have any choice.
Q. Explain that to the jury  that you had no choice.
A. I had no choice. By that I mean I think they would have killed me. I had no choice.
Q. You were in fear?
A. Yes, of course."
Miss L said that after the several acts of intercourse, she dressed and told the defendants that she "didn't want to get involved in anything and to just leave the car and park it," and "just leave me, which they did." Pursuant to her request they dropped her off at 20th Street and 16th Avenue, Newark, a little after 4 A.M., leaving the car with her. After about "five or ten minutes" she left and started walking toward her home. Immediately thereafter she was accosted by detectives who asked her if she was Miss L. Upon identifying herself she was taken to a police station house. There she identified defendants, as did Blyskal who had preceded her to the police station.
While the evidence prima facie made out both the robbery and the rape charges, and in our judgment was sufficient to sustain a conviction of both, it is patent that as to both charges the identification of defendants as the persons who had committed the offenses was in serious issue since both maintained that they were not present when the alleged crimes were committed. Furthermore, in connection with the rape charge, there is implicit in the testimony of the complaining witness herself the question of whether defendants *503 had with force and violence had intercourse with her against her will, as required by the rape statute, or, on the contrary, whether despite her protestations in answer to the judge's questions, she had in fact, for reasons unconnected with fear, voluntarily submitted. Thus, the issue of credibility both as to Blyskal and Miss L assumed formidable proportions.
The specific challenge which defendants make to the court's limitation of the scope of cross-examination is based upon: (1) the refusal of the court to permit the cross-examiner to inquire into Blyskal's activities during the day with respect to the imbibing of alcoholic beverages; (2) the interrogation of that witness concerning his alleged illicit sexual relationship with Miss L, and (3) Miss L's testimony, previously not referred to, that defendants had robbed her of $70, a matter which she did not report to the police officers who apprehended her and took her into custody. It is argued that (1) Blyskal's entire drinking activities, taken in conjunction with the events of the evening and the fact that he was "drowsy," if established, might seriously have affected the weight to be accorded to his assertion that he was physically able to identify defendants as of the time he was robbed; (2) in light of Miss L's avowed quiescence, evidence relating to her sexual immorality was relevant to a showing of defect in character in a sex offense case, on the issue of her consent, and (3) her credibility might also have been affected had defendants been able to establish the fact that she had not reported to the police the robbery which allegedly was perpetrated on her.
Considerable latitude is customarily allowed in the cross-examination of a witness, but the extent of such examination rests in the sound discretion of the trial court. State v. Siegler, 12 N.J. 520, 526-527 (1953). In consonance with this general rule the trial judge has broad discretion to determine the proper limits of cross-examination of a witness whose credibility is put in issue. State v. Pontery, 19 N.J. 457, 473 (1955). Thus, it has been held in a bastardy proceeding that cross-examination was properly limited *504 when it sought to attack the credibility of the complaining witness, State v. Arbus, 54 N.J. Super. 76, 82-84 (App. Div. 1959); see also Annotation, "Cross-examination as to sexual morality for purposes of affecting credibility of witness," 65 A.L.R. 410 (1930); and in a prosecution for carnal abuse it was held that cross-examination which sought to inquire into evidence of sexual acts on other occasions with persons other than the defendant was properly excluded. State v. Raymond, 74 N.J. Super. 434, 438 (App. Div. 1962).
But cross-examination upon proper foundation has been permitted with respect to the complaining witness's general reputation for chastity, or lack of it, as bearing on the issue of consent in a rape case. State v. Rubertone, 89 N.J.L. 285, 287 (E. & A. 1916) (dictum; carnal abuse case); State v. Yevchak, 130 N.J.L. 584, 587 (Sup. Ct. 1943) (no proper foundation; rape case); O'Blenis v. State, 47 N.J.L. 279 (Sup. Ct. 1885) (rape case); Annotation, "Admissibility in rape cases of evidence of previous unchastity, or reputation for unchastity, of prosecutrix," 140 A.L.R. 364, 380 et seq. (1942); 1 Wigmore, Evidence (3d ed. 1940), § 62, p. 464. See also State v. Orlando, 119 N.J.L. 175, 180 (Sup. Ct. 1937), where cross-examination designed to establish that the intercourse was by consent and not forcible was allowed; and State v. Lasowski, 4 N.J. Misc. 489, 491, 133 A. 415 (Sup. Ct. 1926), where it was held to be within the discretionary control of the court to permit cross-examination of the prosecutrix's mother.
The rule that the trial judge has broad discretion in controlling cross-examination is widely endorsed. And a number of jurisdictions have also specifically subscribed to the rule that the defense should be accorded great latitude in the cross-examination of the complaining witness in sex cases where an accusation is easily made and difficult to disprove. See People v. Clark, 63 Cal.2d 503, 47 Cal. Rptr. 382, 407 P.2d 294 (Sup. Ct. 1965); People v. Rainford, 58 Ill. App.2d 312, 208 N.E.2d 314, 316 (App. Ct. 1965); Frady v. State, 212 Ga. 84, 90 S.E.2d 664, 665 (Sup. Ct. 1955); *505 Sherrick v. State, 157 Neb. 623, 61 N.W.2d 358, 366 (Sup. Ct. 1953); State v. Morgan, 235 Minn. 388, 51 N.W.2d 61, 63 (Sup. Ct. 1952); State v. Rosenberry, 156 Kan. 508, 134 P.2d 414, 416 (Sup. Ct. 1943); State v. Jones, 62 Idaho 552, 113 P.2d 1106 (Sup. Ct. 1941); DeSalvo v. People, 98 Colo. 368, 56 P.2d 28, 29 (Sup. Ct. 1936); State v. Warner, 79 Utah 510, 13 P.2d 317, 319 (Sup. Ct. 1932); State v. Paddock, 86 Mont. 569, 284 P. 549, 551 (Sup. Ct. 1930); State v. Brooks, 181 Iowa 874, 165 N.W. 194, 198 (Sup. Ct. 1917); 3 Wharton, Criminal Evidence (12th ed. 1955) § 862, p. 244. These authorities support the proposition that a clear abuse of discretion in the limitation of cross-examination of the prosecutrix in rape cases justifies reversal.
We are satisfied that in the circumstances of this case fundamental fairness required that wider latitude should have been granted defendants in the examination of Blyskal on the issue of the weight of his identification of defendants.
Furthermore, we believe that a ruling made by the court in the course of cross-examination of Blyskal was couched in language capable of prejudicial effect. At the outset of that cross-examination defendants attempted to probe Blyskal concerning his relationship with Miss L. The following then appears in the record:
"THE COURT: I will not permit you to ask any questions about sexual relations. It would be prejudicial to the State's case."
and again:
"* * * Any question concerning sexual relations don't ask. I will not permit it." (Emphasis added)
We are satisfied that the court ruled correctly insofar as it enjoined defendants from questioning Blyskal about his relationship with Miss L. However, if defendants' counsel could reasonably have understood (as is now contended they did) that the use of the word "any" precluded them generally from questioning Miss L, the complaining witness, concerning *506 her chastity, for the purpose of affecting her credibility, or from introducing evidence of her general reputation for chastity, error was committed.
Although we fully recognize that the trial court has wide discretion in regulating or fixing the limits of cross-examination, it seems apparent that the judge did not curb the examination under review with this in mind. From the record it clearly appears that the court mistakenly understood that where, as here, defendants deny presence at and participation in a crime, or where they offer proof of alibi, or both, they are denied the privilege of developing on cross-examination facts militating against the conclusion that a crime was in fact committed. For example, when Miss L was being interrogated about what occurred during the course of the ride from the tavern to Weequahic Park, she was asked whether she smelled the breaths of the men. The prosecutor objected upon the ground that the question was irrelevant, and well it might have been. However, at that juncture the trial judge revealed his thinking. In sustaining the objection upon the ground of irrelevancy he said, "I don't [think so] either because your defense is one of alibi. What difference does it make whether there was or was not alcohol on their breath?" When the attorney suggested that it went to credibility the court said, "How can it affect her [Miss L's] credibility if your defense is that they were not there? Do you want to withdraw that question or do you want to still press it?" The attorney pressed the ruling and the court sustained the objection.
Later, when Miss L was being cross-examined on a statement she had given to the police, without objection to an apparently innocuous answer, the following occurred:
"Q. What time did you return on Monday?
A. I was there Monday morning, and they took the case down all over again.
THE COURT: Is there anything in this statement about this?
MR. ROSENTHALL: Nothing in this statement.
THE COURT: What is the purpose of the examination? Again, your defense is alibi, isn't it?
*507 MR. ROSENTHALL: That is right; but if the occurrence never took place, your Honor * * *
THE COURT: That isn't your defense, is it? Your defense is that these men were not there.
MR. ROSENTHALL: Correct." (Emphasis added)
Notwithstanding that the judge then allowed the answer to stand, he plainly indicated that where alibi is pleaded cross-examination on the subject of whether a crime was in fact committed by anybody is improper. This concept is clearly erroneous. Where the presence of defendant at the scene of the crime is essential to show its commission by him, the burden of proving that presence beyond a reasonable doubt is upon the State. Defendant has neither the burden nor the duty to show that he was elsewhere at the time and so could not have committed the offense. State v. Peetros, 45 N.J. 540, 551 (1965). Alibi is simply a part of defendant's general denial of guilt. Id., at p. 544.
We are obliged to conclude that the judge's misconception of the limited scope of cross-examination where alibi is pleaded led him to think erroneously that, as a matter of law, he was barred from the exercise of his discretion in determining the length to which the cross-examination in this case should have been permitted. It is well settled that discretion means legal discretion, in the exercise of which the judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly. If the trial judge misconceives the applicable law or misapplies it to the factual complex, in total effect the exercise of legal discretion lacks a foundation and becomes an arbitrary act. When this occurs it is the duty of the reviewing court to adjudicate the controversy in light of the applicable law in order that a manifest denial of justice be avoided. Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App. Div. 1960).
Reversed and remanded for a new trial.