164 N.J. Super. 295 (1978)
395 A.2d 1307
HILL MANOR APARTMENTS, PLAINTIFF,
v.
ESTHER BROME, JOHN W.P. COLLIER, BARBARA GLASCO, HENRIETTA STOKES, CLERVAUX & OFELIA AUGUSTE, HARVEY & JEANETTE OLIVER, BERNARD & VIOLA SCOTT, DEFENDANTS.
Superior Court of New Jersey, District Court, Essex County.
November 6, 1978.
*297 Mr. Hilton Davis, attorney for plaintiff.
Mr. Bernard K. Freamon, attorney for defendant.
BAIME, J.D.C.
These consolidated cases present difficult questions pertaining to the parameters of the federal preemption doctrine. The principal issue raised is whether federal regulations promulgated pursuant to the National Housing Act[1] preclude judicial inquiry into the conscionability of rent increases which were approved by the Department of Housing and Urban Development (HUD). The question is presented within the context of an action to summarily evict defendants for failure to pay rent increases in accordance with notices which were served upon them. Plaintiff's claim is grounded upon N.J.S.A. 2A:18-61.1(f) which authorizes the county district court to summarily dispossess a tenant under such circumstances, "provided the increase in rent is not unconscionable" and complies with *298 governing municipal ordinances. The basic thrust of plaintiff's argument is that the Supremacy Clause[2] prohibits the state courts from reviewing the reasonableness of rent increases which have been considered and approved by HUD. In response, defendants contend that the rent increases charged by plaintiff in this case are excessive and that nothing in the National Housing Act or in its legislative history evidences a Congressional design to displace coincident state regulation.
The history of this litigation is formidable and is partially recounted in Hill Manor Apartments v. Stokes, 154 N.J. Super. 496 (App. Div. 1977). The material facts are not in dispute and are essentially a matter of public record. Plaintiff is a large apartment complex owned by the Newark Community Housing Corporation. The building consists of 426 rental units and houses primarily low and middle-income families. The apartment complex is financed, subsidized and regulated pursuant to the National Housing Act.[3] Under this program owners receive insurance on mortgage loans, can borrow at below market interest rates, are subject to reduced equity requirements and enjoy various tax advantages.[4] The statutory scheme is designed to serve the needs of a broad spectrum of citizens by encouraging and stimulating private investment. In return for such assistance mortgagors are required to enter into regulatory agreements which confer broad supervisory authority upon the Federal Housing Commissioner. The agreement in this case, for example, empowers the Commissioner to "control the establishment of maximum rental charges applicable to the project."[5]
*299 Additional safeguards have been adopted to insure the financial viability of the Federal Government's investment in the project. Under current regulations it is incumbent upon the owner to notify tenants with respect to prospective rent increases.[6] All tenants are accorded the right to file objections or otherwise comment upon the proposed increases.[7] The owner is then obliged to submit a certified profit and loss statement and other documents supporting the need to increase rents to HUD for its approval.[8]
Three applications for rent increases have been approved by HUD since 1969 when construction of the apartment complex was completed. It is uncontroverted that a 24.7% annual rent increase was approved on November 27, 1974. It is also undisputed that HUD granted an 11.5% increase on December 18, 1975. A rent strike apparently ensued, resulting in the institution of numerous summary eviction actions by plaintiff. On December 13, 1977 the Appellate Division rendered its decision pertaining to these suits and held that various federal regulations served to preempt the City of Newark's rent control ordinance.[9] The court did not have occasion to consider the specific question presented here, however; i.e. whether the federal Supremacy Clause mandates a similar conclusion with respect to New Jersey's Anti-Eviction Act. That issue is now ripe for resolution by virtue of plaintiff's subsequent decision to seek an additional *300 25% increase which was to become effective on June 1, 1977.
In the latter part of April 1977 plaintiff's agent served defendants with notices to quit and accompanying notification of rent increases.[10] Simultaneously, plaintiff filed an application with HUD and provided appropriate documentation supporting its request. Numerous objections and comments by various tenants were forwarded to HUD and were considered along with the documents submitted by plaintiff. Following its review of these materials, HUD rejected plaintiff's request for a 25% increase in rents. However, it approved a 20.2% increase. Defendants have refused to pay the increased rents claiming that they are excessive and unconscionable.[11]

I
The issue presented here goes to the very heart of our federal system. Under our basic constitutional scheme the Federal Government is delegated an assigned role, all else being reserved to the states.[12] Within its proper sphere, however, the federal law is supreme. The Supremacy Clause establishes "as a principle of our federalism that state and *301 local laws are not enforceable if they impinge upon an exclusive federal domain."[13] Juxtaposed against this important constitutional policy is the undeniably strong traditional interest of the states in defining and protecting the respective rights of landlords and tenants. This obligation has deep historical roots and has assumed greater importance with the passage of time. Both the Legislative and Judicial Branches of our State Government have recognized that a housing emergency exists in New Jersey, "especially in the low and moderate-income housing areas."[14] It has been stated that the deteriorating housing problem in this State has "made it almost impossible for dispossessed tenants to locate other housing accommodations."[15] To ameliorate this problem our Legislature enacted a comprehensive Anti-Eviction Act[16] designed to protect tenants against overreaching landlords. In essence, residential tenants can be evicted only upon a showing of good cause.[17] At issue here is whether federal statutes and regulations prohibit the state courts from performing their essential responsibility under the Anti-Eviction Act to insure that rent increases charged by landlords are not unconscionable. For reasons which I will express shortly, it is my view that the tension between the competing values underlying this dispute can best be alleviated by subordinating the State's interest to that of the Federal Government under the preemption doctrine.
*302 The preemption doctrine was initially developed by the Supreme Court in Gibbons v. Ogden, 22 U.S. 1 (9 Wheat 1), 6 L.Ed. 23 (1824). The rule is founded upon the Supremacy Clause and is designed to insure its effective implementation. Succinctly stated, the Supremacy Clause "mandates that federal law displace concurrent state regulation when the two are incompatible."[18] The courts have enunciated several tests in determining whether a federal statute or regulation supersedes state legislation. The doctrine is applicable where (1) there exists clear evidence that Congress intended to preempt the field, (2) the nature of the subject matter demands exclusive federal uniform regulation, (3) there is an actual conflict between two statutory schemes, and (4) the state law stands as an obstacle to the accomplishment and execution of the federal objectives and purposes.[19] Nevertheless, the mere potential for conflict constitutes insufficient justification to support a finding of preemption. "[O]nly where Congress' preemptive intent is "clear and manifest"' will an exercise of the police power in a field traditionally subject to state regulation be superseded by federal law."[20]
These well settled principles mandate a finding of preemption in this case. Plaintiff is a subsidized insured project.[21] *303 Applicable federal rules promulgated by HUD provide that "regulation of rents for [such] projects * * * is preempted in its entirety."[22] A long line of federal and state decisions holds that local rent control ordinances are preempted by this and similar regulations.[23] Contrary to defendants' argument, it is equally plain that the Supremacy Clause commands a similar conclusion with respect to N.J.S.A. 2A:18-61.1(f).
To be sure, the Anti-Eviction Act is not a rent control law. The statute does not purport to establish ceilings with respect to rental charges, nor does it require prior judicial or administrative approval with respect to such increases.[24]N.J.S.A. 2A:18-61.1(f) merely requires a finding that the increase in rents charged by the landlord is not "unconscionable" as a prerequisite to summary eviction.
Although it is arguable that the judicial role contemplated by N.J.S.A. 2A:18-61.1(f) does not constitute "regulation" *304 of rents as that phrase is used in 24 C.F.R. § 403.1 (a), the preemptive command is implictly set forth in the structure of the federal rule as well as its purpose. The history pertaining to the federal regulation discloses that "[p]reemption of control over the rentals of subsidized * * * projects was considered to be the only effective means available to protect" HUD's economic interest.[25] Wholly apart from its financial stake in subsidized projects, HUD also "has an interest in insuring the fulfillment of the goals of the National Housing Act."[26] By retaining the authority to determine appropriate rental charges, HUD sought to further the laudable objective of creating additional dwelling units which the public can afford. State interference, for whatever purpose, would tend to thwart HUD in fulfilling the objective of the National Housing Act.[27]
Further, § 403.1(b) expressly states that "[c]ompliance with [a state law or local ordinance] shall not be required as a condition of or prerequisite to, the remedy of eviction." The language of the regulation is not vague or ambiguous. The obvious intent of HUD in promulgating 24 C.F.R. § 403.1(b) was to supersede state laws where their enforcement would impair the ability of the Federal Government to insure the safety of its investment.
Defendants argue that HUD's function under 24 C.F.R. § 401.2 is to establish the "maximum permissible rents" chargeable, and thus a state court decision authorizing lesser increases would not necessarily jeopardize the financial well-being of the project, nor would it impair the Federal Government's investment. It is their contention that judicial inquiry into the conscionability of rent increases approved by *305 HUD would not serve as an obstacle to accomplishment of the federal legislative objective. There appears to be some confusion with respect to whether the rents established by HUD are the maximum permissible or the minimum necessary to insure efficient operation of a subsidized project.[28] Although the evidence presented by plaintiff is somewhat equivocal in that respect, the record supports the conclusion that the rental increases authorized by HUD in this case constitute the minimum necessary so as not to jeopardize the financial soundness of the project. The certified financial statements submitted to HUD reveal drastic increases in operational costs which plainly necessitate commensurate increases in gross income. Further, HUD's regional representative testified that the project has experienced severe financial difficulties caused in part by prior underestimates with respect to operational costs. According to his testimony, the rent increases approved by HUD are absolutely essential to insure the project's financial integrity.
Defendants cite Edgemere at Somerset v. Johnson, 143 N.J. Super. 222 (Cty. D. Ct. 1976), in support of their argument that N.J.S.A. 2A:18-61.1(f) is not superseded by federal regulations. There the county district court held that HUD's approval of rent increases preempted a rent control ordinance which had been adopted by Franklin Township. In Edgemere plaintiff contended, as here, that the same federal regulations served to bar judicial inquiry into the conscionability of rent increases authorized by HUD. The county district court apparently disagreed. Specifically, the trial judge stated "we do not consider that the preemption *306 by HUD of control of the minimum rents chargeable by plaintiff preclude this court from a consideration of whether such rent increases are unconscionable and therefore preclude dispossession by reason of nonpayment." The court went on to find that the rent increases charged were not unconscionable and did not contravene N.J.S.A. 2A:18-61.1(f).
The county district court's decision in Edgemere, supra, is plainly distinguishable. Plaintiff was the owner of a garden apartment complex financed by a mortgage insured by HUD. Unlike the project involved in this litigation, the building was not directly subsidized by the Federal Government. Applicable federal regulations provided that local rent control laws were to be preempted in such cases only where HUD issued an appropriate directive.[29] In Edgemere, supra, HUD issued a certificate of preemption specifically noting that its action superseded "any local law or regulation inconsistent therewith." Id. at 224. In point of fact, HUD's directive was forwarded to the Franklin Township Rent Leveling Board. The certificate expressly stated that any "decision of the Franklin Township Rent Leveling Board, which prevents implementation of the rent increase approved by HUD [would] jeopardize the Department's economic interest in the project." Id. at 225. It is clear, therefore, that HUD's directive pertained to the local rent control ordinance and not to the Anti-Eviction Act. Under these circumstances, the county district court found no intention on the part of HUD to preempt the state statute.
Here, the applicable federal rule provides that all state and local rent regulation laws are superseded.[30] The regulation further states that owners of subsidized insured projects are excused from complying with state and local laws which *307 condition the remedy of eviction upon adherence to rent control provisions.[31] The decision in Edgemere, supra, is plainly not controlling with respect to the facts presented in this case.
The regulation of rents "is both a sophisticated and delicate affair, both because of the lack of control over the components of cost and because of the high risk of flight of capital if the level is set too low."[32] Interference by the state judiciary with respect to the administration of that task would tear at the very roots of our federal system. I, therefore, conclude that 24 C.F.R. § 403.1(a) and (b) serve to bar state judicial inquiry into the reasonableness of rents established by HUD pursuant to its legislative mandate.

II
Even were this conclusion not compelled by the Supremacy Clause, I would be extremely reluctant to interfere with the administration of a governmental responsibility which has been expressly entrusted to a federal agency by Congress. To superimpose my factual findings on those of a federally-created agency assigned to the task of establishing rental charges would contravene well settled principles of comity and federalism. In short, our federal system contemplates a policy which generally permits federal administrative agencies to execute their duties free from interference by the state judiciary.[33] Many and varied considerations support *308 this well recognized principle. Vital among these considerations is the concept of comity, that is, a proper and mutual respect between the federal and state governments. Interference by the state judiciary with respect to a responsibility conferred upon a federal agency with presumed expertise in its assigned field would be inherently abrasive and would tend to erode the mutual respect between governmental entities which is so necessary to the effective operation of our federal system.
Thus, even if the Supremacy Clause does not mandate federal preemption in this case, principles of comity and federalism would nevertheless require a substantial showing of extraordinary circumstances as a prerequisite to state judicial review of the conscionability of rents approved by HUD. Strong evidence that the mortgagor intentionally falsified financial reports in an effort to gain HUD's approval, for example, might well suffice in this regard. In any event, it is unnecessary at this time to further define the types of cases which might call for state intervention. Suffice it to say, nothing has been presented here which would support deviation from the policy of abstention.

III
Despite my conclusion that state judicial intervention is unwarranted in this case, lengthy hearings were conducted concerning the rental increases approved by HUD. Both parties were afforded the opportunity to present expert testimony to insure a complete record. The evidence thus presented supports the conclusion that the rental increases charged, although undeniably high, were not unconscionable.
Certain prefatory comments are necessary. There appears to be no published opinion in this State deciding whether the landlord or the tenant has the burden of proof with respect to the issue of conscionability. For a variety of reasons, it is my view that the burden should be placed upon the landlord. It is to be noted initially that the landlord *309 generally has information in his possession pertaining to rent structure, operational costs, debt service and taxes. Such information is not available to most tenants. Since eviction proceedings are of a summary nature and pretrial discovery is not permitted, it would be difficult if not impossible for the tenant to provide the court with sufficient information to enable it to make an informed judgment pertaining to the reasonableness of rents charged.[34] Further, it is the landlord who is seeking affirmative relief. It thus behooves him to present evidence justifying the tenant's removal. And finally, the Anti-Eviction Act is a "creature of the Legislature" and its provisions are to be strictly construed.[35]
The burden rests with the landlord to prove each and every element of his claim by a fair preponderance or the greater weight of the credible evidence. This principle is fully applicable with respect to the issue of conscionability. Contrary to defendants' argument, however, the landlord need not present expert testimony in that regard. All that is necessary is that the landlord prove by a fair preponderance of the credible evidence that the rent increases charged are not unconscionable.
Within the context of the Anti-Eviction Act, conscionability has been defined in terms of "actions which would not be acceptable to any fair and honest man, or conduct which is monstrously harsh and shocking to the conscience."[36] Although it would be unreasonable to expect landlords to present sophisticated financial proofs in support *310 of their claims, as in public utility cases[37] and proceedings pertaining to the constitutionality of rent control ordinances,[38] evidence pertaining to operational costs would appear to be necessary. These reasonable expenses "may include, but are not limited to, expenditures for utilities, insurance, maintenance, reasonable repairs, depreciation for capital improvements, taxes, allowances for vacancies" and uncollectibles.[39] I have underscored the term "reasonable expenses" because our Constitution does not require that inefficient landlords be rewarded by virtue of their excesses.[40] As noted by our Supreme Court in Troy Hills v. Parsippany-Troy Hills Tp., 68 N.J. 604, 627 (1975), the landlord's books "are, at best, merely prima facie evidence of expenses" and "are always open to question for lack of reasonableness."
The evidence presented here clearly establishes the need to increase rents to the levels authorized by HUD. Plaintiff is a limited dividend nonprofit corporation. A review of its books and records starkly reveals its precarious financial condition. At present, plaintiff is in arrears in its mortgage to the extent of $1,600,000. Projections as to expenditures have historically been underestimated. Operational costs have vastly increased during the past eight years. Although the delivery of services continues to suffer, nothing has been presented which would indicate that HUD's projections with respect to future expenditures were either unreasonable or unwarranted.
Accordingly, I find that the rent increases charged by plaintiff were not unconscionable. Judgments for possession will thus be entered.
NOTES
[1] 12 U.S.C.A. §§ 1701-50 (1970). The program is implemented through HUD and its subsidiary, the Federal Housing Administration (FHA). See 24 C.F.R. § 200.1-3 (1977).
[2] U.S. Const., Art. VI, § 2.
[3] See 12 U.S.C.A. § 1715l(d)(3).
[4] See Kargman v. Sullivan, 552 F.2d 2, 4 (1 Cir.1977); Hahn v. Gottlieb, 430 F.2d 1243, 1245-46 (1 Cir.1970).
[5] The Commissioner is also authorized to establish categories of individuals eligible for admission to the project, provide rules and regulations pertaining to continued occupancy based upon financial need, define accounting and bookkeeping procedures, and audit the books and records of the mortgagor. To enable the Commissioner to properly perform his responsibilities the mortgagor is required to furnish certified financial reports.
[6] See 24 C.F.R. § 401.2.
[7] Id.
[8] 24 C.F.R. § 401.3.
[9] Hill Manor Apartments v. Stokes, supra at 200. The Newark rent control provisions are set forth in Revised Ordinances 15:9B-1 et seq.
[10] Defendants contend that both under the common law and current statutes plaintiff was obliged to serve them personally. Plaintiff presented evidence disclosing that personal service was in fact effectuated. Suffice it to say, it is my view that plaintiff's proofs properly established that each of the defendants was served personally. That being the case, it is unnecessary for the court to decide whether present law requires personal service.
[11] Defendants have continued to pay rent to plaintiff but have refused to pay the additional amounts claimed to be owing by virtue of the increases approved by HUD. By order of this court, such rent increases have been deposited in an escrow account pending disposition of these cases.
[12] State v. Funicello, 60 N.J. 60, 69 (1972) (Chief Justice Weintraub concurring).
[13] Los Alamos School Bd. v. Wugalter, 557 F.2d 709, 712 (10 Cir.1977).
[14] Floral Park Tenants v. Project Holding, Inc., 152 N.J. Super. 582, 590-591, (Ch. Div. 1977). See also, Southern Burlington Cty. NAACP v. Mt. Laurel Tp., 67 N.J. 151, 158-159 (1975); Parkway, Inc. v. Curry, 62 N.J. Super. 410 (Cty. D. Ct. 1978).
[15] Gardens v. Passaic, 130 N.J. Super. 369, 375 (Law Div. 1974), aff'd 141 N.J. Super. 437 (App. Div. 1976).
[16] N.J.S.A. 2A:18-53 et seq.
[17] N.J.S.A. 2A:18-61.3.
[18] Note, "Pre-emption of Local Rent Control Laws by HUD Regulation," 45 Fordham L. Rev. 651, 652 (1976). See also, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), reh. den. 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082; Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
[19] Florida Lime & Avocado Growers, Inc. v. Paul, supra; New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 570 (1978); Philadelphia v. Environmental Protec. Dep't, 73 N.J. 562, 568 (1977), rev'd 430 U.S. 141, 97 S.Ct. 987, 51 L.Ed.2d 224 (1977).
[20] New Jersey Guild of Hearing Aid Dispensers v. Long, supra at 570. See also, Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).
[21] 24 C.F.R. § 403, the applicable federal preemption regulation, distinguishes between three types of projects: unsubsidized insured projects, subsidized insured projects and HUD-owned projects. The decision in Hill Manor Apartments v. Stokes, supra at 154 N.J. Super. 499, erroneously states that plaintiff is an unsubsidized insured project. Such is not the case. All parties have stipulated that plaintiff is a subsidized insured project and thus falls within Subpart C of the regulations.
[22] 24 C.F.R. § 403.1(a).
[23] See, e.g., Hill Manor Apartments v. Stokes, supra; Edgemere at Somerset v. Johnson, 143 N.J. Super. 222 (Cty. Ct. 1976); Levin Sagner-Orange v. Orange Rent Control Bd., 142 N.J. Super. 429 (Law Div. 1976), aff'd 147 N.J. Super. 303 (App. Div. 1977). See also, 515 Associates v. Newark, 424 F. Supp. 984 (D.N.J. 1977); City of Boston v. Hills, 420 F. Supp. 1291 (D. Mass. 1976).
[24] See Helmsley v. Fort Lee, 78 N.J. 200 (1978); Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543 (1975); Brunetti v. West Milford, 68 N.J. 576 (1975); Troy Hills v. Parsippany-Troy Hills Tp. Council, 68 N.J. 604 (1975); Inganamort v. Fort Lee, 62 N.J. 521 (1973).
[25] Edgemere at Somerset v. Johnson, supra 143 N.J. Super. at 227.
[26] 515 Associates v. Newark, supra. at 991.
[27] See Floral Park Tenants v. Project Holding, Inc., supra 152 N.J. Super. at 600. See also, Overlook Terrace Management Corp. v. West New York Rent Control Bd., 71 N.J. 451 (1976).
[28] See Kargman v. Sullivan [Druker v. City of Boston], 552 F.2d 2, 7 (1 Cir.1977). There the Court of Appeals reversed a decision rendered by the District Court. The District Court had concluded that the rents established by HUD constituted the minimum necessary to operate the project. 410 F. Supp. 1314, 1320 (D. Mass. 1976). The Court of Appeals held that this factual finding was not supported by the record. 552 F.2d at 7.
[29] See 24 C.F.R. § 403.1(b). See also, note 21.
[30] 24 C.F.R. § 403.1(a).
[31] 24 C.F.R. § 403.1(b).
[32] Glasco v. Hills, 412 F. Supp. 615, 618 (D.N.J. 1976), aff'd 558 F.2d 179 (3 Cir.1977).
[33] This principle is not one-sided. The Supreme Court has held that the federal courts may not interfere with an on-going state criminal prosecution or civil proceedings. See, e.g., Helfant v. Kugler, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed. 2d 15 (1975), reh. den. 421 U.S. 1017, 95 S.Ct. 2426, 44 L.Ed.2d 686 (1975); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
[34] See Snyder v. I. Jay Realty Co., 53 N.J. Super. 336, 347 (App. Div. 1958), rev'd in part 30 N.J. 303 (1959).
[35] See Cahayla v. Saikevich, 119 N.J. Super. 116, 118 (Cty. D. Ct. 1972). See also, Schlesinger v. Brown, 116 N.J. Super. 500, 502 (Cty. D. Ct. 1971).
[36] Edgemere at Somerset v. Johnson, supra, 143 N.J. Super. at 229; Parkway, Inc. v. Curry, supra 62 N.J. Super. 410.
[37] See, e.g., In re Intrastate Industrial Sand Rates, 66 N.J. 12 (1974).
[38] Helmsley v. Fort Lee, supra.
[39] Troy Village v. Parsippany-Troy Hills Tp. Council, supra, 68 N.J. at 626.
[40] Id. at 627.