NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1305-18T3

SUMMIT PLAZA ASSOCIATES,

    Plaintiff-Respondent,

v.

RAGEE KOLTA, MARK R.
KOLTA, SOUAD KOLTA,
and DAVID R. KOLTA,

    Defendants-Appellants.

_____

APPROVED FOR PUBLICATION

February 20, 2020

APPELLATE DIVISION

Argued November 7, 2019 – Decided  February 20, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. LT-007691-18.

John V. Salierno argued the cause for appellants.

Tracey L. Goldstein argued the cause for respondent (Feinstein Raiss Kelin Booker & Goldstein LLC, attorneys; Tracey L. Goldstein, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

This appeal requires us to determine the parameters of the federal preemption doctrine in the context of a summary dispossess action. Defendants, a family of four, are tenants at plaintiff landlord's multi-family apartment building, which receives housing assistance payments for eligible families pursuant to section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (Section 8), and section 524(a) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA), Pub. L. No. 105-65, Tit. V, 111 Stat. 1384, as amended. Defendants received Section 8 housing assistance payments from 1980 until 2002, when their income exceeded the Section 8 threshold, requiring them to pay the full contract rent. In 2017, after receiving approval from the United States Department of Housing and Urban Development (HUD), plaintiff increased the contract rent, but defendants refused to pay the increased amount. As a result, plaintiff filed an eviction action under N.J.S.A. 2A:18-61.1(a), for failure to pay rent, and N.J.S.A. 2A:18-61.1(f), for failure to pay rent after a rent increase (New Jersey's Anti-Eviction Act).

Prior to trial, invoking preemption, plaintiff moved in limine to preclude defendants from introducing any evidence challenging the HUD-approved rent increase. Over defendants' objection, in an August 31, 2018 Law Division order, the trial court granted plaintiff's motion, finding that federal regulations

2

preempted New Jersey's Anti-Eviction Act. The parties later settled, and a consent judgment was entered on October 12, 2018, rendering the underlying legal issue moot. See Daoud v. Mohammad, 402 N.J. Super. 57, 59 (App. Div. 2008) (finding the defendant tenant's appeal from a judgment of possession entered against him in a summary dispossess action moot because "defendant vacated the . . . premises, which has since been re-rented"). "Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996). However, notwithstanding its mootness, we now resolve the issue because it "is one of substantial importance, likely to reoccur but capable of evading review," ibid., and affirm the judge's August 31 evidentiary ruling.

## I.

We summarize the relevant facts and procedural history. In December 2016, pursuant to Section 8 and MAHRA, plaintiff entered into a twenty-year "Project-Based Section 8 Housing Assistance Payments Renewal Contract for Mark-Up-to-Market Project" (HAP contract) with HUD and the New Jersey Housing and Mortgage Finance Agency (NJHMFA), HUD's contract administrator. Under the HAP contract, the operation, management and maintenance of plaintiff's property is subject to HUD's regulatory control. The HAP contract authorized increased contract rents based on "capital repairs" to

the apartments agreed to by plaintiff. A contract rent is the maximum rent approved by HUD that a landlord is permitted to charge a Section 8 tenant, who pays thirty percent of the tenant's household income. The remaining portion of the contract rent is paid directly to the landlord by HUD. Once a tenant's income exceeds the Section 8 threshold, HUD regulations require the tenant to pay the full contract rent without the benefit of an assistance payment and prohibits the landlord from evicting the tenant based solely on the tenant's financial ineligibility. Pursuant to the HAP contract, the contract rent for a two-bedroom apartment in plaintiff's property was increased to $2700, effective December 21, 2016.

Defendants have lived in a two-bedroom apartment in plaintiff's property since 1980. Based on their annual recertification, a process by which tenants submit information to the landlord regarding household income and other relevant information required by HUD, defendants received a Section 8 housing subsidy. However, in 2002, defendants' household income increased, due partly to their now adult sons' employment, and they no longer qualified for housing assistance. As a result, defendants paid the full contract rent of $1006 from 2002 until 2017.[1] In 2017, upon receiving notice of the rent increase authorized by the HAP contract, defendants refused to pay, prompting

---

[1] Plaintiff acquired ownership of the property in 2013.

plaintiff to file an eviction action, which was ultimately resolved by way of a consent judgment dated February 28, 2017. The February 28, 2017 judgment reduced defendants' rent from $2700 to $1460 per month through February 28, 2018, and required defendants to "complete the recertification process," including "signing a new lease . . . no later than April 1, 2017."

On March 1, 2017, defendants completed the recertification process and reported a total annual household income of $182,819. Defendants also executed a one-year HUD model lease, beginning March 1, 2017, reflecting the agreed upon monthly rent of $1460. The lease specified that "th[e] monthly rent [was] less than the market (unsubsidized) rent due on th[e] unit," and that "the amount of rent . . . may be changed during the term of [the lease]" if "HUD or the Contract Administrator . . . determines, in accordance with HUD procedures, that an increase in rents is needed." In the event of a rent increase, pursuant to the lease, "[t]he landlord agree[d] to give the [t]enant at least [thirty] days advance written notice." "The landlord" could "terminate" the lease based on "the [t]enant's material noncompliance with [its] terms."

Effective December 21, 2017, HUD approved another contract rent increase for all 480 units on plaintiff's property. Pertinent to this appeal, monthly rent for all two-bedroom units was increased to $2724. The HUD

approval letter indicated "[t]he increase [was] determined to be reasonable and necessary for the continued viability of the property." On May 30, 2018, plaintiff notified defendants in writing that "[b]eginning July 1, 2018," the rent would increase from $1460 to $2724. The notice explained that the increase "was approved by HUD for . . . two-bedroom units at the property." Defendants were advised that "[i]f [they did] not accept and agree to th[e] rent increase, [they] must vacate and surrender possession of the premises no later than June 30, 2018," or face eviction proceedings. Defendants once again refused to pay the rent increase or vacate the premises, and plaintiff filed the summary dispossess action that is the subject of this appeal.

Prior to trial, plaintiff moved in limine to preclude defendants from introducing any evidence challenging the HUD-approved rent increase. In support, plaintiff argued that because its property was a HUD-regulated apartment building, New Jersey law was preempted under 24 C.F.R. § 246.1 (Section 246.1) and 24 C.F.R. § 246.21 (Section 246.21) (collectively, HUD regulations). Thus, according to plaintiff, HUD-approved rent increases were not reviewable in summary dispossess proceedings.

Defendants countered that the HUD regulations did not apply to them because they no longer qualified financially to receive Section 8 assistance payments. They asserted that because their tenancy was not controlled by the

HUD regulations, the court must review the rent increase under the standard of unconscionability embodied in New Jersey's Anti-Eviction Act, pursuant to N.J.S.A. 2A:18-61.1(f), prohibiting eviction when the increase is "unconscionable." Defendants argued that even if the HUD regulations applied, the prohibition against rent regulation specified in Section 246.1 and Section 246.21 did not apply to N.J.S.A. 2A:18-61.1(f) because the statute was not a rent control law. Further, defendants contended HUD failed to comply with 24 C.F.R. § 246.22 (Section 246.22), requiring written notification to the local board of HUD's proposed rent increase and preemption of rent regulation, a purported prerequisite to a finding of preemption. In reply, plaintiff certified that defendants "receive[d] the benefit of HUD involvement in the property" even if they no longer received rent assistance payments.

In an oral decision, the judge determined the "case law . . . support[ed] [plaintiff's] position," and granted plaintiff's application to bar evidence of unconscionability "because the rent increase issue [was] pre-empted" by the HUD regulations. The judge reasoned that HUD had "to have pre-emption control over rentals of subsidized apartments" because it is in "the public's best interest to . . . protect the economic interest of these HUD properties." According to the judge, "[w]e want these properties to exist and flourish so that people will have these apartments available to them." To that end, "the

federal government has allowed [HUD] to create this process where the rents are set by HUD."

The judge explained that because defendants "signed the lease," and the "lease . . . acknowledges the fact that there[ is] a possibility . . . [a tenant] might not get any subsidy," defendants understood and agreed that they were subject to the HUD regulations, whether they qualified for a subsidy or not. Further, the judge was "particularly swayed" by plaintiff's argument that despite the fact that defendants no longer qualified for the subsidy, they received significant benefits from their tenancy in a HUD regulated apartment, including the HUD regulations' prohibition against eviction when the tenant no longer qualifies for a subsidy as well as the ability to re-certify and re-qualify for a subsidy if their financial circumstances worsened.

## II.

On appeal, defendants renew their contention that N.J.S.A. 2A:18-61.1(f) is not preempted by federal law, and assert the judge erred in ruling otherwise and barring evidence of unconscionability as permitted under the statute. "To be sure, 'a trial court is afforded considerable latitude regarding the admission of evidence, and is to be reversed only if the court abused its discretion.'" Alves v. Rosenberg, 400 N.J. Super. 553, 562 (App. Div. 2008) (quoting State v. Nelson, 173 N.J. 417, 470 (2002)). "Discretion, however,

means <u>legal</u> discretion, 'in the exercise of which the judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly.'" <u>Id.</u> at 562-63 (quoting <u>State v. Steele</u>, 92 N.J. Super. 498, 507 (App. Div. 1966)). "Obviously, '[i]f the trial judge misconceives the applicable law or misapplies it . . . the exercise of legal discretion lacks a foundation and becomes an arbitrary act.'" <u>Id.</u> at 563 (alterations in original) (quoting <u>Steele</u>, 92 N.J. Super. at 507). In that regard, the trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Here, we agree with the judge's determination that N.J.S.A. 2A:18-61.1(f) is preempted by federal law under the Supremacy Clause, <u>U.S. Const.,</u> art. VI, § 2. "There are several theories under which federal law will preempt a state statute." <u>Franklin Tower One, L.L.C. v. N.M.,</u> 157 N.J. 602, 615 (1999).

> Congress explicitly may express its intent to preempt state law. Alternatively, preemption may be inferred where the federal legislation is so comprehensive that it creates the inference that Congress intended to leave no room for state regulation in the area.
>
> Preemption also may be found where state law actually conflicts with federal law. Conflict preemption occurs in two instances: where compliance with both federal and state regulations is a physical

9

> impossibility, or where a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Under conflict preemption analysis, a court first must consider the purposes of the federal law, and then evaluate the effect of the state law on those purposes.
>
> [Id. at 615-16 (citations and quotation marks omitted).]

"[P]re-emption is not to be lightly presumed," Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281 (1987), and "the historic police powers of the States [are] not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress." Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Thus, "[t]he party claiming preemption bears the burden of supporting that claim by 'clear and manifest evidence.'" Franklin, 157 N.J. at 615 (quoting Pa. Med. Soc'y v. Marconis, 942 F.2d 842, 853 (3d Cir. 1991)).

Traditionally, states have had "broad power to regulate housing conditions in general and the landlord-tenant relationship in particular." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 440 (1982). However, because "[t]he Section 8 program was enacted '[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing,'" public policy goals shared by the State of New Jersey, courts have consistently recognized that "[t]he federal

legislation and regulations explicitly contemplate that the states will work with the federal government to implement the Section 8 program." Franklin, 157 N.J. at 608-09 (second alteration in original) (quoting 42 U.S.C. § 1437f(a)).

Here, plaintiff is a Section 8 program participant, and has entered into a HAP contract classified as a "subsidized insured project," governed by HUD regulations. Section 246.1 and Section 246.21 are the governing HUD regulations germane to this appeal. See Glukowsky v. Equity One, Inc., 180 N.J. 49, 65 (2004) ("The regulations of a federal agency are given the same weight and afforded the same presumptions regarding preemption as federal statutes . . . ." (citing Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 844 (1984))).

Section 246.1 provides in pertinent part:

> (a) . . . The regulation of rents for projects coming within the scope of "Subpart C—Subsidized Insured Projects" is preempted in its entirety by the promulgation of these regulations. . . .
>
> (b) Any state or local law, ordinance, or regulation is without force and effect insofar as it purports to regulate rents of: . . . projects coming within the scope of subpart C . . . . Compliance with such law, ordinance, or regulation shall not be required as a condition of, or prerequisite to, the remedy of eviction, and any law, ordinance, or regulation which purports to require such compliance is similarly without force and effect.

11

(c) It is the purpose of [HUD] that these regulations shall bar all actions of a board that would in any way frustrate the purpose or effect of these regulations or that would in any way delay, prevent or interfere with the implementation of any increase in rental charges approved by HUD.

Additionally, Section 246.21 provides:

[HUD] finds that it is necessary and desirable . . . to preserve the continued viability of [Section 8] projects as a housing resource for low-income families. [HUD] also finds that it is necessary and desirable to protect the substantial economic interest of the Federal Government in those projects. Therefore, [HUD] concludes that it is in the national interest to preempt, and it does hereby preempt, the entire field of rent regulation by local rent control boards, . . . or other authority, acting pursuant to state or local law as it affects projects covered by this subpart.

Despite the explicit language in the regulations expressly preempting state law, defendants argue that N.J.S.A. 2A:18-61.1(f) does not constitute "rent regulation" as contemplated in the HUD regulations. Under N.J.S.A. 2A:18-61.1(f), "[n]o lessee or tenant . . . may be removed by the Superior Court from any . . . tenement leased for residential purposes" unless a tenant "has failed to pay rent after a valid notice to quit and notice of increase of said rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rent increases." N.J.S.A. 2A:18-61.1(f) (emphasis added). See also Mayes v. Jackson Twp. Rent Leveling Bd., 103 N.J. 362, 378 (1986) (explaining that under N.J.S.A. 2A:18-

12

61.1(f), "unconscionability of rent increase is a defense to removal for cause based upon failure to pay rent"). Defendants argue that because N.J.S.A. 2A:18-61.1(f) does not constitute regulation of rents as that phrase is used in the HUD regulations, application of the statute as a defense to the present eviction action is not preempted.

In Hill Manor Apartments v. Brome, 164 N.J. Super. 295, 302 (Cty. Ct. 1978), the court rejected an identical argument and determined that the HUD regulations at issue, which were similar to the regulations here, preempted N.J.S.A. 2A:18-61.1(f). In Brome, as here, the plaintiff-landlord was "a subsidized insured project" regulated by HUD. Ibid. "[T]he applicable federal rule provide[d] that all state and local rent regulation laws [were] superseded. The regulation further state[d] that owners of subsidized insured projects [were] excused from complying with state and local laws which condition the remedy of eviction upon adherence to rent control provisions." Id. at 306-07 (footnotes omitted). When the defendant-tenants in Brome "refused to pay the [HUD-approved] increased rents claiming that they [were] excessive and unconscionable," the plaintiff filed actions to summarily evict them. Id. at 300.

In holding that "well settled principles mandate[d] a finding of preemption in th[e] case," id. at 302, the Brome court reasoned:

> Applicable federal rules promulgated by HUD provide that "regulation of rents for [federally subsidized] projects is preempted in its entirety."  A long line of federal and state decisions holds that local rent control ordinances are preempted by this and similar regulations.  Contrary to defendants' argument, it is equally plain that the Supremacy Clause commands a similar conclusion with respect to N.J.S.A. 2A:18-61.1(f).
>
> To be sure, [New Jersey's] Anti-Eviction Act is not a rent control law.  The statute does not purport to establish ceilings with respect to rental charges, nor does it require prior judicial or administrative approval with respect to such increases.  N.J.S.A. 2A:18-61.1(f) merely requires a finding that the increase in rents charged by the landlord is not "unconscionable" as a prerequisite to summary eviction.
>
> Although it is arguable that the judicial role contemplated by N.J.S.A. 2A:18-61.1(f) does not constitute "regulation" of rents as that phrase is used in [the HUD regulations], the preemptive command is implicitly set forth in the structure of the federal rule as well as its purpose.
>
> [Id. at 303-04 (footnotes omitted).]

Focusing on the wording in the regulation, which, as here, did not require "'[c]ompliance with [a state law or local ordinance] . . . as a condition of or prerequisite to, the remedy of eviction,'" the Brome court found that "[t]he language of the regulation is not vague or ambiguous," and "[t]he obvious intent of HUD in promulgating [the regulation] was to supersede state laws where their enforcement would impair the ability of the [f]ederal

14

[g]overnment to insure the safety of its investment." Id. at 304. The court concluded that "[i]nterference by the state judiciary with respect to the administration of that task would tear at the very roots of our federal system." Id. at 307.

We find the Brome court's reasoning persuasive and applicable with equal force to the circumstances presented herein. Defendants assert Brome is distinguishable because, unlike here, the tenants in Brome were all receiving housing assistance payments. In support, defendants point to a provision of 24 C.F.R. § 246.20 (Section 246.20), which states that "subpart [C] will only apply with respect to units occupied by tenants receiving housing assistance thereunder if the contract covers fewer than all units in the project." Defendants contend that "because they no longer qualify financially to receive housing assistance payments, neither the HAP contract nor HUD regulations apply to [their] tenancy, even if they may apply to every other tenancy in the [property]."

However, the HAP contract expressly encompasses all 480 "contract units" contained in the property. Thus, despite the fact that defendants no longer receive Section 8 assistance payments, the apartment in which they reside is still subject to the HAP contract, and thereby governed by the HUD regulations. Indeed, other than housing subsidies, HUD's regulatory control

15

affords defendants additional benefits, including HUD housing quality standards, annual inspections, and tenant-protective eviction practices.

Finally, defendants renew their contention that HUD's noncompliance with its own regulation precludes preemption. Specifically, defendants assert Section 246.22 compels HUD to provide written notification to the local rent control board "about any proposed rental increases and that HUD 'has preempted the entire field of rent regulation'" as "a prerequisite to the preemption dictate in [Section 246.1(a)]." However, according to defendants, the "record is completely bereft of any discussion of this issue whatsoever," plaintiff "utterly failed to show compliance with this section of the [HUD] regulation," and the judge erred when this "critical" issue was "ignored."

Section 246.22 provides, in relevant part, that

> The local HUD office . . . shall notify in writing any [rent control] board in the area in which the project is located that it is processing the [rent increase] application and, that, pursuant to this subpart, HUD has preempted the entire field of rent regulation by a board acting pursuant to state or local law as it affects the project.
>
> [24 C.F.R. § 246.22(b).]

Further, the HUD approval letter states that, pursuant to Section 246.22, the landlord "must give a copy of this approved rent schedule to the local rent

control board . . . within ten . . . days after the approved rents become effective."

We acknowledge the record contains no evidence of compliance with Section 246.22. However, HUD is not a party to this action, and defendants cite no authority to support their proposition that compliance with Section 246.22 is a prerequisite to a finding of preemption. In fact, none of the HUD regulations requires such compliance, and Section 246.22 specifies that "[n]otice to the [local] board of the approved increases in rents does not confer upon the board a right to approve or disapprove [HUD]'s action or to exercise jurisdiction over the implementation of the rent increases." 24 C.F.R. § 246.22(c). Thus, even if the notice was provided, the local rent control board would have no authority to override HUD's decision granting the rent increase.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1305-18T3