# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5310-16T3

T.R.,[1]

    Plaintiff-Appellant,

v.

P.F.,

    Defendant-Respondent.

_____

    Argued June 5, 2018 — Decided July 9, 2018

    Before Judges Mayer and Mitterhoff.

    On appeal from Superior Court of New Jersey,
    Chancery Division, Family Part, Burlington
    County, Docket No. FV-03-0021-18.

    Ted M. Rosenberg argued the cause for
    appellant.

    Scott A. Krasny argued the cause for
    respondent (Furlong and Krasny, attorneys;
    Scott A. Krasny, of counsel and on the brief).

PER CURIAM

---

[1]  We use initials to protect the parties' privacy interests.

Plaintiff appeals from a July 12, 2017 order dismissing her domestic violence complaint and vacating the temporary restraining order (TRO) dated July 4, 2017 and the amended TRO dated July 10, 2017. We affirm.

Plaintiff obtained the TROs based on a series of text messages sent by defendant from June 29 through July 3, 2017. The parties had a nearly three year dating relationship, which was tumultuous. During her trial testimony, plaintiff described the dating relationship as "on and off." According to plaintiff, "every time [defendant] gets mad, he'll send some very mean things and then I'll block [his messages]. And then he'll just get through to me somehow, and I'll forgive him and I'll go back. He'll buy me something. He'll say nice things."

Plaintiff also told the judge that she had blocked defendant's texts "at least a hundred" times before June 29. Each time prior to June 29, plaintiff would remove the block on her phone and continue dating defendant.

At trial, the judge heard testimony regarding an Instagram message in which plaintiff told defendant's ex-girlfriend how to manipulate defendant to make him angry so that defendant would then apologize and buy her gifts. In that message, plaintiff told defendant's ex-girlfriend "[y]ou have to play his game if [you] want[] his attention."

A-5310-16T3

Plaintiff also testified regarding two prior incidents of domestic violence. Immediately after one such incident, a tire slashing,[2] plaintiff sent an overtly suggestive birthday card to defendant. In the birthday card, admitted as evidence during the trial, plaintiff expressed that defendant was "the greatest gift anyone could receive." In another described incident, during which defendant wrestled with plaintiff and grabbed her cellphone, plaintiff testified that defendant thereafter spent the night, the parties had consensual sex, and plaintiff never sought medical treatment or reported the incident.

The text messages between June 29 and July 3, 2017, were admitted as evidence at trial. The tone and tenor of the messages were coarse and intended to harass plaintiff. Plaintiff testified that she felt threatened and scared by defendant's text messages sent during this time period.

At the conclusion of the trial testimony, the judge issued an oral decision from the bench. The judge determined that defendant committed an act of domestic violence in accordance with the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17

---

[2] Defendant testified that plaintiff's tire was damaged by a broken beer bottle. However, because he was angry as a result of a fight with plaintiff, defendant told plaintiff that he had the tire slashed.

to -35. Specifically, defendant admitted his texts constituted harassment, N.J.S.A. 2C:33-4(a) and (c).

However, the judge found no evidence of a reasonable fear of threats to plaintiff's life, health, or safety to support the need for a final restraining order (FRO). The judge determined that both parties had "some issues with credibility." The judge found that the parties participated in a "heightened" form of "domestic contretemps." The judge's finding was based on the parties' trial testimony wherein each admitted to "playing the game."

Because plaintiff testified that defendant's text messages prior to June 29 made her feel "upset," as opposed to feeling threatened as she did upon receiving defendant's messages after June 29, the judge examined the entirety of the parties' relationship. The judge found the parties had "an up and down kind of relationship" and that "this was their relationship for good reasons, for bad reasons, for no reasons." The judge concluded that plaintiff, overall, was "annoyed, troubled, upset" by defendant but was not "fearful of this defendant." The judge stated:

> They tried in my opinion to actually manipulate each other with their different forms of conduct. They each knew how to push each other's buttons. They each knew how to rise to the other one's level and as I said, I don't think that, while I totally disapprove of what was said here over those three or four

days, I don't think it is sufficient to constitute the type of fear that [plaintiff] believes has been generated particularly given all of her testimony about this relationship over the course of time.

In his amplification of reasons pursuant to R. 2:5-1(b), the judge wrote:

the admitted acts of harassment were indicative of the ongoing tumultuous relationship that the parties had over a significant period of time as opposed to an escalation of harassing conduct by the [d]efendant that had arisen to the point that the element of fear was instilled in the [p]laintiff that caused her to seek the issuance of a [f]inal [r]estraining [o]rder to protect herself (and also her children).

The judge found that the text messages from June 29 to July 3, 2017, leading to plaintiff's filing a TRO, "were not unlike the manner in which the parties conducted their on/off relationship over the course of approximately two years."

On appeal, plaintiff contends that the judge improperly considered whether defendant would have to forfeit his weapon if an FRO was issued and misapplied the standard set forth in Silver v. Silver, 387 N.J. Super 112 (App. Div. 2006).

Our review of a decision by a judge assigned to the Family Part is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A family judge's findings should be affirmed if supported by "adequate, substantial, [and] credible evidence." Id. at 411-12

(citing <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 N.J. 474, 484 (1974)).  "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." <u>Id.</u> at 413.  However, if a judge makes a discretionary decision under a legal misconception, we need not accord the usual deference.  <u>State v. Steele</u>, 92 N.J. Super. 498, 507 (App. Div. 1966); <u>see also</u> <u>Gotlib v. Gotlib</u>, 399 <u>N.J. Super.</u> 295, 309 (App. Div. 2008) (reversing where the court "ignores applicable standards").

We reject plaintiff's contention that the judge contemplated defendant's occupation as a police officer or the forfeiture of his weapons in deciding whether to issue an FRO.  There is nothing in the record to indicate that the judge considered the potential seizure of defendant's duty weapon in reaching his determination.  Plaintiff suggests we "infer" that the judge erroneously considered defendant's occupation as a police officer in rendering his decision.  However, plaintiff proffers nothing more than improper conjecture and speculation in support of this argument, rather than competent evidence in the record.

We also reject plaintiff's argument that the judge misapplied the standard in <u>Silver</u>.  In determining whether to grant an FRO, the family court applies a two prong analysis.  <u>Silver</u>, 387 N.J. Super. at 125-27.  The first prong is proof of the commission of

a predicate act in accordance with the PDVA. Id. at 125-26. The second prong is a finding that "relief is necessary to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)). In accordance with Silver, "the guiding standard is whether a restraining order is necessary . . . to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. At issue in this case is whether plaintiff satisfied the second prong of Silver for the entry of an FRO.

Family Part judges "have been specially trained to detect the difference between domestic violence and the more ordinary differences that arise between couples, and . . . [because of that expertise,] their findings are entitled to deference." J.D., 207 at 482. Consequently, we will not disturb the findings of a Family Part judge unless "they are so wholly insupportable as to result in a denial of justice." In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms, 65 N.J. at 483-84).

Here, we find that the evidence supports the judge's conclusion as to the second prong of the Silver analysis. Based on the testimony, the judge found that the on/off relationship of the parties over the course of nearly three years, the provoked fights by the parties in anticipation of subsequent gifts of

affection, the "playing the game" behavior of both parties, and the "tumultuous" nature of the parties' relationship failed to support a determination that plaintiff required an FRO to protect her from danger or further abuse. Based on the evidence, we agree with the Family Part judge that plaintiff was not in immediate danger or at risk of further abuse.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8                                                                    A-5310-16T3