**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3157-15T4

A.K.,[1]

    Plaintiff-Respondent,

v.

D.G.,

    Defendant-Appellant.

_____

Argued January 31, 2019 – Decided March 14, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0820-02.

Michael P. De Marco argued the cause for appellant (De Marco & De Marco, attorneys; Michael P. De Marco, of counsel and on the brief).

Douglas J. Kinz argued the cause for respondent.

---

[1] We use initials in order to protect the privacy of the parties.

PER CURIAM

In this post-judgment matrimonial matter, defendant D.G. appeals from the following Family Part orders: (1) the April 2, 2016 order directing him to pay $68,928 to plaintiff A.K. as additional child support for the years 2010, 2011, and 2012, and $3,593.75 as reimbursement for extracurricular activities; (2) the September 25, 2015 order denying his motion for reconsideration; (3) the February 16, 2016 order awarding plaintiff $15,000 for counsel fees; and (4) the March 10, 2016 order entering judgment against him in the amount of $106,133.15.[2]  We affirm all orders.

I.

The parties were married in August 1993, and have four daughters who live with plaintiff in Indiana.  Their Marital Settlement Agreement (MSA), incorporated into their April 15, 2002 final judgment of divorce, set defendant's child support obligation at $2500 per month based on his base salary of $175,000 in 2002, which was above the then maximum amount of $150,800 under the New Jersey Child Support Guidelines (Guidelines).  Plaintiff had no income other than the $30,000 per year she received in alimony under the MSA.

---

[2]  This amount includes $18,611.84 for a cost of living adjustment (COLA) for the years 2010 and 2012 the court directed defendant to pay under a separate September 25, 2015 order, from which defendant does not appeal.

The MSA provided that child support would be recalculated using the Guidelines if defendant's income exceeded $175,000 for the prior year. In order to recalculate this amount, the MSA required defendant to provide documentation of his income for the prior year by August 15 of each year. If the recalculation revealed that the Guidelines amount exceeded $2500 per month, defendant had to pay the difference to plaintiff in a lump sum by September 1. The MSA included an example of how child support would be recalculated if defendant's income was $250,000.

The child support amount did not include expenses related to the children's extracurricular activities. Regarding this expense, the MSA provided:

> The parties shall be responsible for the costs related to the extracurricular activities for the Children in proportion to their relative after tax income . . . from all sources except child support, as well as any income that may be imputed by the [c]ourt in accordance with Miller v. Miller, [160 N.J. 408 (1999)], at any particular time. As of the execution of this Agreement and until such time as child support is recalculated, the Husband shall pay [seventy-five percent] and the Wife shall pay [twenty-five percent]. This shall include, but not limited to, ballet lessons, swimming lessons, hobbies, clubs, school trips and all other expenses associated therewith. It is agreed that the Wife will obtain the Husband's consent, which shall not be unreasonably withheld, prior to enrolling the Children in a particular activity such as, but not limited, to those listed above. The Husband shall pay his share of the expenses, to the

3

Wife, within seven (7) days of being presented with a bill, invoice or to her proof of required payment.

Regarding the children's school expenses, the MSA provided:

If the parties agree that the Children should be enrolled in pre-school and/or private school (elementary through high school) the parties shall be responsible for all costs associated therewith, including tuition, books, uniforms, fees, etc., in proportion to their relative after tax income, from all sources except child support, as well as any income that may be imputed by the [c]ourt in accordance with Miller v. Miller. As of the execution of this Agreement and until such time as child support is recalculated, the Husband shall pay [seventy-five percent] and the Wife shall pay [twenty-five percent].

The MSA further provided that if either party failed to cure a breach or a default, that party would be liable for the other party's attorney's fees, "resulting from or made necessary by the bringing of any suit or other proceeding to secure such payment or enforce any such obligation, provided" that such suit or other proceeding resulted in a favorable "[judgment], decree, award or order."

In September 2011, the parties exchanged their 2010 income tax returns and W-2 forms. These documents showed that defendant's yearly income was approximately $500,000, triggering a recalculation of defendant's child support obligation for 2010. The parties could not reach an agreement on the amount of child support. As a result, plaintiff filed a motion on December 27, 2011,

seeking a recalculation of defendant's child support obligation, as well as reimbursement for the children's extracurricular activities and counsel fees and costs.

In opposition, defendant argued that plaintiff's request for recalculation of child support was inconsistent with the MSA, and he should not be obligated to pay anything additional for his daughters' extracurricular activities because he did not consent to their enrollment in those activities.

Judge John E. Selser held a three-day hearing on non-consecutive days between March 2014 and October 2014. Prior thereto, the parties exchanged discovery, including their 2011 and 2012 income tax returns and W-2 forms.

At the hearing, plaintiff testified that she had remarried, had one son with her current husband, and they lived together in Indiana with her four daughters from her marriage to defendant. Plaintiff testified as to her economic circumstances in 2010, 2011, and 2012. She was no longer receiving alimony, was employed as a kindergarten teacher, and her approximate income was $35,000 in 2010, $36,000 in 2011, and $37,000 in 2012. Plaintiff also testified as to her monthly expenses for 2010, which totaled $6102 and included costs for shelter, transportation, and other personal items.

A-3157-15T4

Plaintiff testified as to her current economic circumstances, which she detailed in her March 10, 2014 Case Information Statement (CIS). The CIS revealed that plaintiff was still employed as a kindergarten teacher at an annual salary of $38,878, and her net worth had increased to $509,705. Her most current monthly expenses of $8147 included costs for shelter, transportation, and other personal items, with $6900 attributed solely to expenses for her four daughters. Plaintiff explained that the difference in monthly expenses from 2010 to 2014 was due to the tuition for her daughters' private school and her oldest daughter's auto insurance. In addition, plaintiff's day-to-day expenses increased because her daughters were now teenagers.

Plaintiff testified that three of her four daughters attended Catholic school. Plaintiff discussed the matter with defendant prior to the children's enrollment, but he did not consent. Nonetheless, plaintiff enrolled the children in Catholic school because she believed it was the best choice for them. Likewise, she enrolled the parties' other daughter in public school because she believed it was the best choice for that child.

Plaintiff also testified that during the years 2008, 2009, 2010, and 2011, there were a number of expenses she incurred for her daughters' extracurricular activities, including soccer, cheerleading, basketball, volleyball, Confraternity

6

of Christian Doctrine classes for all four children, a class trip to Washington, D.C. for their oldest daughter, and braces for another daughter. Plaintiff notified defendant of these activities and sent him copies of the bills, requesting payment of his seventy-five percent share. Defendant paid for some of the expenses, but objected to paying for the traveling soccer program, the Washington, D.C. trip, and the braces. Consequently, plaintiff paid one-hundred percent of those expenses, for which she sought reimbursement from defendant.

Plaintiff also sought reimbursement for "Various Insurance Deductions." She explained that this amount represented deductions defendant made from his prior contributions toward extracurricular activities for the premiums he paid for the children's health insurance. Plaintiff testified that these deductions were improper because defendant took them after receiving notice that she had secured other, better health insurance for the children.

Defendant testified that he had remarried and had two daughters with his current wife. His current wife also had one daughter from a previous marriage who lived with them in New Jersey.

Defendant testified that he was currently employed by Goldman Sachs in New York City as Vice President in the internal audit program, and served in that capacity for the past seven years. His annual base salary was approximately

$225,000, and he received an average yearly bonus of $135,000 in addition to his base salary. He also received a number of shares of stock as part of the bonus. His approximate income was $500,000 in 2010, $440,000 in 2011, and $320,000 in 2012.

Defendant testified as to his current monthly expenses, which included his child support obligation, shelter, transportation, and other personal items. His monthly expenses in 2014 totaled $9965. To cover these costs, he and his current wife borrowed against credit cards throughout the year and then paid the balances on those cards when he received his bonus. Defendant also testified that his net worth was $191,240. Factors effecting that number included the money defendant and his current wife had borrowed for their home, an in-ground pool, and vehicles (a 2009 BMW and a 2010 Toyota).

In an April 2, 2015 order and written opinion, Judge Selser directed defendant to pay plaintiff $68,928 as additional child support for the years 2010, 2011, and 2012, and $3,593.75 as reimbursement for extracurricular activities. The judge reserved decision on the counsel fee issue and ordered each party to submit a certification of services.

Defendant filed a motion for reconsideration. Plaintiff filed a cross-motion to amend the April 2, 2015 order to require defendant to pay a COLA in

connection with the additional child support, as well as counsel fees and costs incurred in connection with the motions.

Following a hearing on September 25, 2015, Judge Selser entered an order denying defendant's motion for reconsideration and a separate order granting plaintiff's cross-motion to amend the April 2, 2015 order to include a COLA in the amount of $18,611.84. In a February 16, 2016 order and written opinion, the judge directed defendant to pay $15,000 for plaintiff's counsel fees. On March 10, 2016, the judge entered an order for judgment against defendant in the amount of $106,133.15, which incorporated the amounts awarded to plaintiff in the prior orders. This appeal followed.

## II.

Defendant contends that Judge Selser erred in awarding plaintiff $68,928 as additional child support for the years 2010, 2011, and 2012, and denying his motion for reconsideration. He argues the judge did not articulate what the reasonable needs of the children were and failed to consider the standard of living and economic circumstances of each party as required by N.J.S.A. 2A:34-23(a)(2).

"Our review of a trial judge's factual findings, following a non-jury trial, is limited." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015).

"Generally, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). In matrimonial matters, this "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Elrom, 439 N.J. Super. at 433 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Consequently, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result . . . .'" Ibid. (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "Finally, legal conclusions are always reviewed de novo." Id. at 433-34 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A-3157-15T4

As for the denial of a motion for reconsideration, we have determined,

> Reconsideration itself is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.]" It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but "should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."
>
> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

We will not disturb a trial judge's denial of a motion for reconsideration absent a clear abuse of discretion. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "[An] abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). Applying the above standards, we discern no reason to reverse.

11

In his April 2, 2015 written opinion, Judge Selser noted that the parties' combined income was above the maximum amount under the Guidelines. Thus, he applied the Guidelines up to the maximum amount and recalculated defendant's base amount of child support, finding defendant owed $5052 for 2010 ($421 a month), $4680 for 2011 ($390 a month), and $3804 for 2012 ($317 a month), for a total of $13,536. The judge then applied the factors in N.J.S.A. 2A:34-23(a) to supplement the base amount, finding it appropriate considering defendant's increase in income. The judge recognized that "the needs of the children are not frozen in time at the time of the divorce, but should reflect the greater fortune of either or both parent subsequent to the divorce."

Based on plaintiff's testimony and CIS, which Judge Selser found credible, the judge determined that the needs of the children were $6900 per month. The judge explained that:

> It is always difficult to figure out child support for a current year, [much] less to go back in time three to five years . . . . The [CISs] available to the court on behalf of the plaintiff were from January of 2010 and February 2014. Obviously the years in question fall right in between those years. This is to say that the children's needs were greater than the 2010 [CIS] but something less than what was stated in 2014. In her calculations, the plaintiff expressed the belief that the needs of the children, after factoring out of the A B C expenses herself, were approximately $6,910 a month. The court accepts this number.

The court has independently run figures of the children's needs for the years 2010, 2011, and 2012. Undoubtedly the expenses varied during those years, however, this court does believe that an average expense list for the children for those years would total $6,900 per month.

The judge found that $6900 reflected a "'typical' financially conservative mid-west lifestyle" and the children were "not living any sort of an extravagant lifestyle . . . ."

Judge Selser then described the parties' finances to which they testified, and noted the very significant disparity in their income. Plaintiff's source of income was her teaching job, and defendant's source of income was his job as Vice President of the internal audit program at Goldman Sachs, at which he earned significantly more income then he did at the time of the divorce. The judge found both parties had assets and debts that seemed "pretty commensurate with their incomes and lifestyle[s]."

In determining the child support amount, Judge Selser calculated the difference between the income available to plaintiff on a monthly basis (her salary plus child support) and the children's monthly expenses of $6900 for 2010, 2011, and 2012. The judge determined the total unsatisfied amount was $55,392 ($18,288 for 2010; $18,516 for 2011; and $18,588 for 2012). Thus, the judge concluded defendant's total additional child support obligation

13

(Guidelines-based amount plus supplemental amount) was $68,928 for the years 2010, 2011 and 2012.

The trial court must apply the Guidelines when considering an application to establish or modify child support. R. 5:6A. However, "[i]f the combined net income of the parents is more than $187,200 per year, the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,200) and the factors specified in N.J.S.A. 2A:34-23." Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, at paragraph 20(b) (2019). "The key to both the Guidelines and the statutory factors is flexibility and the best interest of children." Pascale v. Pascale, 140 N.J. 583, 594 (1995). It is well established that "where the parties have the financial wherewithal to provide for their children, the children are entitled to the benefit of financial advantages available to them." Isaacson v. Isaacson, 348 N.J. Super. 560, 579 (App. Div. 2002). "Children are entitled to not only bare necessities, but a supporting parent has the obligation to share with his children the benefit of his financial achievement." Id. at 580.

In this regard, a judge is afforded a great deal of discretion, Caplan v. Caplan, 182 N.J. 250, 264 (2005), but the discretion must be guided by consideration of the factors specified in N.J.S.A. 2A:34-23(a):

(1) Needs of the child;

(2) Standard of living and economic circumstances of each parent;

(3) All sources of income and assets of each parent;

(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

In the context of high-income parents whose ability to pay is not an issue, "the dominant guideline for consideration is the reasonable needs of the

children, which must be addressed in the context of the standard of living of the parties. The needs of the children must be the centerpiece of any relevant analysis." Isaacson, 348 N.J. Super. at 581. The consideration of children's needs must include their age and health — with the understanding that infants' needs are less than those of teenagers — as well as the children's assets or income. Ibid.

Determining a child's "needs" in a high-income earning family presents "unique problems." Id. at 582. As we have instructed:

> First, a balance must be struck between reasonable needs, which reflect lifestyle opportunities, while at the same time precluding an inappropriate windfall to the child or even in some cases infringing on the legitimate right of either parent to determine the appropriate lifestyle of a child. This latter consideration involves a careful balancing of interests reflecting that a child's entitlement to share in a parent's good fortune does not deprive either parent of the right to participate in the development of an appropriate value system for a child. This is a critical tension that may develop between competing parents. Ultimately, the needs of a child in such circumstances also calls to the fore the best interests of a child.
>
> [Ibid. (citation omitted).]

"Judges must be vigilant in providing for 'needs' consistent with lifestyle without overindulgence." Id. at 583. Even with high-income parents, the court

still must "determin[e] needs of a child in a sensible manner consistent with the best interests of the child." Id. at 584.

Plaintiff testified at length about the reasonable needs of the children, which were also reflected in her CIS. Regarding her Schedule A (shelter) expenses, plaintiff testified as to the cost of her home and the cost of maintaining it on a monthly basis, and indicated the entire family unit, including her current husband and son, shared the expenses listed. Plaintiff indicated the amount listed on her Schedule B (transportation) expenses included only her and her oldest daughter's vehicles. Both vehicles were owned outright, and thus, the only recurring expenses plaintiff listed were for maintenance and fuel. Although one of the two vehicles belonged to plaintiff, she testified that she used the vehicle primarily for the children's benefit — to get back and forth to work as well as to drive the children to all their extracurricular activities and doctor's appointments. Plaintiff also indicated the amount listed on her Schedule C (personal) expenses pertained only to her and her four daughters.

Plaintiff testified that to calculate that exact amount for her Schedule C expenses, she took her family's monthly expenses and recorded only five-sevenths of the total, but recorded one-hundred percent of the costs listed for "school lunches," "private school costs," "orthodontic," and "sports and

hobbies" for the parties' daughters. Plaintiff admitted that approximately one-half of the listed medical expenses were attributable to her treatments for breast cancer. Plaintiff also testified that one-fifth of the remaining expenses, including food, household supplies, restaurants, and entertainment, were attributable to her. She then described in detail what each of those expenses represented. For example, as regarding the $366 per month restaurant expenses she listed, plaintiff testified that she and her family dined out "maybe once a week" at "[an] Applebee's or Friday's, family dining kind of establishment." Plaintiff also testified that she and her current husband used a Quicken computer software program to record these expenses, and they categorically recorded every receipt and cash withdrawal on a daily basis.

Thus, plaintiff testified that her total expenses for her four daughters was $6900 per month. To cover these monthly expenses, she used the $2500 in child support, her $2500 in income, and her current husband covered the remaining amount. Plaintiff also indicated that she and her current husband had taken from savings to cover these expenses.

Judge Selser found that plaintiff's testimony was "very credible and indicated . . . that the children [were] not living any sort of an extravagant lifestyle in Indiana." The judge found that an average expense listed for the

18

children for the years 2010, 2011 and 2012 would total $6900 per month. This was not a random figure, but an amount the judge found was fair based on plaintiff's credible testimony and CIS. Thus, contrary to defendant's assertions, the judge sufficiently articulated what the reasonable needs of the children were.

Defendant argues the judge erred in using the $6900 figure, and $6102 was a more accurate figure. However, as plaintiff testified, $6900 was the approximate amount she spent per month on the parties' daughters, and the judge found that testimony credible.

Defendant further argues the judge ignored his testimony that plaintiff listed $2129 in expenses on her Schedule C for prescription drugs, medical, medical insurance, private school costs, contributions, life insurance, savings/investment, and professional expenses that did not pertain to his children. However, except to express his disagreement with some of plaintiff's choices, such as sending three of their children to Catholic school, defendant did not testify as to what should or should not have been included in plaintiff's monthly expenses. The bulk of his testimony pertained to his income and assets.

Nonetheless, regarding prescription drugs and medical expenses, plaintiff testified that approximately one-half of the medical expenses were related to her treatment for breast cancer, and Judge Selser considered that fact when arriving

19

at his decision. In addition, plaintiff testified that under the MSA, defendant was responsible for the children's medical insurance until she became employed, and she could add the children to her plan if she could secure medical insurance at a lower rate. Plaintiff indicated that her current husband's medical insurance was better, low-cost insurance, so after they married, she added the children to that plan. Plaintiff also explained that she was having difficulty using defendant's insurance in Indiana. She notified defendant, but he did not cease insuring the children under his plan. Because of plaintiff's decision, medical insurance was a monthly expense for her. In response to this, defendant testified that plaintiff's insurance was not comparable to his insurance, and there were some unique differences within the policies that still made his insurance more advantageous.

Judge Selser considered this monthly expense when recalculating the amount of child support. Although defendant disagrees with the judge, the judge's decision was based on credible evidence in the record, which defendant cannot refute.

Plaintiff testified that the children's private school costs were justified because Catholic school was a better choice for three of her four daughters. Judge Selser considered those costs as well in his recalculation of child support.

Although defendant disagreed with plaintiff's decision to enroll his three daughters in private school, he did not provide any evidence to support his argument that the children should have attended public school. Consequently, it cannot be said the judge abused his discretion by including this expense as part of the children's reasonable needs.

Plaintiff testified that the amount listed on her CIS for "contributions" represented donations made to their church. Because the children attended Catholic school and were raised in a Catholic household, these donations benefitted the children, and thus, it was not improper for the judge to include this expense as part of the children's reasonable needs.

Regarding the cost for a life insurance premium, plaintiff testified that although her current husband is the primary beneficiary, her children are contingent beneficiaries and would benefit from this policy in the event of plaintiff's untimely death because they currently reside with plaintiff and her husband in Indiana. The same was true for the amount listed under "savings and investment."

Finally, plaintiff testified that her "professional expenses" represented the amount paid to her financial advisor, who helped her and her current husband manage their money accounts, which benefits the children directly because they

depend on plaintiff to cover day-to-day expenses and will need plaintiff to help them pay for college.

Even if there were some incidental benefit to plaintiff from the inclusion of the above-listed expenses, "the law is not offended if there is some incidental benefit to the custodial parent from increased child support payments." Isaacson, 348 N.J. Super. at 584. The law is offended, however, where there is "overreaching in the name of benefiting a child . . . ." Id. at 585. There is no evidence to suggest that plaintiff was overreaching in her monthly expenses. As Judge Selser found, plaintiff's budget reflected a "'typical' financially conservative mid-west lifestyle." Nothing listed in plaintiff's Schedule A, B, or C expenses was extravagant. All of plaintiff's expenses were reasonable. Although she testified she would like to provide her children with more luxuries, the amount the judge awarded did not provide for that. Instead, the judge calculated the amount of child support to meet, not exceed, the needs of the children.

Lastly, defendant argues that Judge Selser erred by failing to consider the standard of living and economic circumstances of each parent. The judge, however, did consider those factors. Specifically, the judge noted the amount of the parties' income and sources of income. He also noted that both parties

22

"have assets and debts that seem pretty commensurate with their incomes and lifestyles" and that "neither party is unreasonably wallowing in debt way above their means."

Although it is true that plaintiff's net worth is higher than defendant's, the figures do not truly reflect the parties' economic circumstances. For example, a substantial portion of plaintiff's current net worth is traced to assets contributed by her current husband, such as the Ameriprise brokerage account. Also included in plaintiff's net worth are the children's Section 529 accounts, which had over $90,000 at the time plaintiff completed her CIS, and which would ultimately reduce defendant's share of the children's college expenses under the MSA.

In actuality, defendant's finances were in better shape than he claimed. As reflected in his CIS, he had approximately $58,000 in cash available in his checking and savings accounts, whereas plaintiff had $10,200 in cash available. In addition, defendant's Goldman Sachs 401k plan was worth $212,953, whereas all of plaintiff's retirement plans totaled approximately $110,000.

Moreover, although plaintiff had less debt than defendant, that was because she borrowed less than he did. Defendant spent more than plaintiff on several Schedule C items, including food and household supplies, restaurants,

23

and clothing. Defendant also lived in a larger and more expensive home, had an in-ground pool with custom diving stone, and drove more expensive vehicles. As Judge Selser succinctly stated, both parties "have assets and debts that seem pretty commensurate with their incomes and lifestyles."

In sum, Judge Selser based his award of additional child support on all the evidence presented and clearly did not abuse his discretion in this case. His decision was fair and amply supported by the record.

III.

Defendant argues that because he did not provide the requisite consent for his daughters to participate in extracurricular activities, Judge Selser erred in directing him to reimburse plaintiff for the cost of certain extracurricular activities. Defendant also argues the judge made no finding that the withholding of such consent was unreasonable. We disagree with these arguments.

Plaintiff testified that at the time of the divorce, and as memorialized in the MSA, she and defendant agreed that the children's extracurricular activities would be a separate cost. Plaintiff was responsible for twenty-five percent of those expenses and defendant was responsible for seventy-five percent. That percentage was based on the parties' incomes at the time of the divorce.

However, if the parties' incomes were to later change, the MSA provided for an adjustment of the percentages in proportion to their after tax incomes.

Plaintiff claimed that defendant failed to pay his share of extracurricular expenses, and thus, requested reimbursement in the amount of $3593. Judge Selser awarded plaintiff this amount, finding the records plaintiff kept of her expenses were "extensive and quite accurate" and she "ke[pt] very careful track of her expenditures."

It is readily apparent from Judge Selser's decision that he found defendant's withholding of consent unreasonable, and the record supports that finding. Plaintiff testified at length as to the reasons why she enrolled her daughters in a traveling soccer program, why she allowed her oldest daughter to go on a class trip to Washington, D.C., and why her youngest daughter needed braces. The parties specifically contemplated these extracurricular activities in the MSA, and, as the judge found, they were reasonable. Defendant's objections, given his high income, were simply not credible. Based on defendant's income, he had the ability to pay his share of these expenses, and therefore, it was not unreasonable for Judge Selser to award plaintiff the amount she requested.

Lastly, in a brief one sentence, defendant argues that plaintiff included the extracurricular activities expenses in her Schedule C expenses. However, there

is no documentary support for this argument. Rather, the various insurance deductions ($1,726.90), the amount plaintiff spent on braces ($435.94), and the amount she spent for the class trip ($478.50) were one-time only expenses, and based on plaintiff's credible testimony, were not included in her most recent compilation of monthly expenses.

Regarding the travel soccer and private school expenses, which totaled $952.41 for the years 2010 and 2011, defendant presented no evidence to suggest that plaintiff included his portion of these expenses in her Schedule C expenses. Plaintiff testified that she prepared a compilation of what she believed defendant owed for his seventy-five percent share of the expenses, and in support of her position, she presented a list of expenses and receipts. Plaintiff did not say that these expenses were also included in her monthly budget, and again, defendant presented no evidence to the contrary. Thus, there is no reason to disturb Judge Selser's decision on this basis. Moreover, plaintiff only asked that defendant reimburse her for seventy-five percent of the extracurricular expenses, whereas, pursuant to the MSA, she was entitled to more in light of defendant's increased income. For example, in 2010, defendant earned ninety-two percent of the total family income, yet plaintiff only requested a contribution of seventy-five percent.

26

Judge Selser awarded only what plaintiff requested, nothing more, which was supported by her testimony as well as her careful documentation. The record supports his decision.

IV.

Defendant argues that because he did not have a greater ability to pay and his position was not unreasonable, Judge Selser erred in awarding plaintiff attorney's fees. We reject this argument.

Plaintiff requested $24,535 in counsel fees. Judge Selser awarded her $15,000, finding:

> [I]t is the opinion of this court that a fee award to [plaintiff's attorney] of $15,000 would be appropriate. It is not that plaintiff has no ability to pay her fees. She has some ability, however, given her income as opposed to the defendant's income, her income is certainly less than the full ability to pay fees that the defendant possesses.
>
> The position taken by the defendant proved to be a position that did not allow this matter to settle. His position really brought this matter to the [p]lenary hearing. It is only fair that he absorb most of the fees.

An award of counsel fees in matrimonial matters rests in the discretion of the trial court. R. 4:42-9(a)(1); R. 5:3-5(c); Williams v. Williams, 59 N.J. 229, 233 (1971). "Discretion, however, means legal discretion, 'in the exercise of which the judge must take account of the law applicable to the particular

27

circumstances of the case and be governed accordingly.'" Alves v. Rosenberg, 400 N.J. Super. 553, 562-63 (App. Div. 2008) (quoting State v. Steele, 92 N.J. Super. 498, 507 (App. Div. 1966)).

When reviewing an application for counsel fees, a court must "consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23. In a family action, Rule 4:42-9(a)(1) authorizes the award of counsel fees and refers to Rule 5:3-5(c), which provides that a court should consider the following factors:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

All applications for counsel fees in family actions must also address the factors set forth in R.P.C. 1.5(a). R. 4:42-9(b). These include the reasonableness of the fees charged given the task and the skill level of the attorney. R.P.C. 1.5(a). "In addition, the party requesting the fee award must

be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012).

Moreover, where one party pursues a position in bad faith, the court may award reasonable attorney's fees to the other irrespective of the parties' relative economic health "because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000).

Here, contrary to defendant's argument, plaintiff's finances were not superior to his finances. As Judge Selser found, defendant's yearly income during the relevant time-period was substantial. Specifically, defendant had an annual base salary of approximately $225,000 in addition to an average bonus of $135,000. Plaintiff, on the other hand, earned approximately $37,000 a year as a school teacher. Although defendant may have had a "fairly good amount of debt," he still had better means to afford counsel fees than plaintiff.

Further, we agree with Judge Selser that defendant's position was unreasonable. Defendant maintained throughout this matter that the MSA limited the recalculation of child support to the maximum support award under

the Schedule of Child Support Awards set forth in Appendix IX-F. Defendant posited that since the MSA required the parties to apply the Guidelines in recalculating child support, the child support obligation should be limited to the maximum support amount prescribed for a combined net income of $187,200 per year. Thus, defendant asserted his additional child support obligation for all three years should be only $7346.

Rule 5:6A provides, in pertinent part:

> The guidelines set forth in Appendix IX of these Rules shall be applied when an application to establish or modify child support is considered by the court. The guidelines may be modified or disregarded by the court only where good cause is shown. . . . In all cases, the determination of good cause shall be within the sound discretion of the court.

> A completed child support guidelines worksheet in the form prescribed in Appendix IX of these Rules shall be filed with any order or judgment that includes child support that is submitted for the approval of the court. If a proposed child support award differs from the award calculated under the child support guidelines, the worksheet shall state the reason for the deviation and the amount of the award calculated under the child support guidelines.

Paragraph 21 of Appendix IX-A provides that "[i]n all cases, the decision to deviate from the guidelines shall be based on the best interests of the child. All deviations from the guidelines-based award and the amount of the

guidelines-based award must be stated in writing in the support order or on the guidelines worksheet."  Paragraph 22 of Appendix IX-A requires:

> In accordance with R. 5:6A, if a child support amount in a stipulated or consent agreement differs from an award calculated using the support guidelines, the parties or their representatives shall state on a child support guidelines worksheet: (a) the amount of support that would have been awarded if calculated using the guidelines and (b) the reason that the stipulated amount differs from the guidelines-based award.

Paragraph 20(b) of Appendix IX-A specifically provides for "extreme parental income situations" such as those here:

> If the combined net income of the parents is more than $187,200 per year, the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,200) and the factors specified in N.J.S.A. 2A:34-23.  Thus, the maximum guidelines award in Appendix IX-F represents the minimum award for families with net incomes of more than $187,200 per year.  An award for a family with net income in excess of $187,200 per year shall not be less than the amount for a family with a net income of $187,200 per year.  Because estimates on the marginal cost of children in intact families with net incomes of more than $187,200 per year are either unreliable or unavailable, the court shall not extrapolate the Appendix IX-F schedules (statistically or by adding amounts from different income ranges) beyond that dollar limit.

31

The MSA does not indicate that the parties intended to restrict the recalculation of child support to the maximum combined net income under the Schedule of Child-Support Awards set forth in Appendix IX-F and eliminate any discretionary-based award if their combined net income exceeded the maximum set forth in the Schedule. Rather, the MSA indicates the parties anticipated defendant's income would increase and unequivocally provides that if his income was "in excess of $175,000 for the prior year, child support shall be recalculated using the . . . Guidelines." Thus, by agreeing to recalculate defendant's child support obligation using the Guidelines, the parties bound themselves to using the Schedule of Child Support Awards up to the maximum level of their combined income and then applying the factors in N.J.S.A. 2A:34-23 to determine an additional discretionary amount if their combined net income exceeded the maximum under the Schedule.

Defendant's position to the contrary was clearly unreasonable. As Judge Selser noted, it was "pointed out to [defendant] through counsel on several occasions prior to the [p]lenary hearing that the [Guidelines] provide for a supplement to child support when the parties combined [income] well exceeded the maximum amount under the Guidelines." Nonetheless, defendant refused to settle and forced the matter to proceed to a plenary hearing, which required

32

plaintiff to incur travel and legal expenses.  Accordingly, we conclude that the award of attorney's fees in this case was entirely appropriate and not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3157-15T4